# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| **GILLIAN CUNNINGHAM and KEVIN CUNNINGHAM,**<br><br>    **Plaintiffs.**<br><br>v.<br><br>**U.S. CITIZENSHIP & IMMIGRATION SERVICES; KEVIN K. McALEENAN, in his official capacity as Acting Secretary, U.S. Department of Homeland Security; KENNETH T. CUCCINELLI, in his official capacity as Acting Director, U.S. Citizenship & Immigration Services; DeSHAWNA WILLIAMS, in her official capacity as Field Office Director, U.S. Citizenship & Immigration Services, Memphis, Tennessee;**<br><br>    **Defendants.** | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMAS RELIEF

Gillian Cunningham and Kevin Cunningham (collectively "Plaintiffs" or "the Cunninghams") based upon their personal knowledge and through their undersigned counsel provide as follows:

### INTRODUCTION

1.  This is an action requesting review of and immediate relief from multiple decisions by the United States Citizenship and Immigration Services ("USCIS") denying Plaintiffs' separate I-485 Applications to Register Permanent Residence or Adjust Status ("I-485 Petition" or

"Petition"). (*See* USCIS Denials attached hereto as collective Exhibit 1 (collectively, the "Decisions").)

The USCIS previously granted two motions to reopen and reconsider, which led to the USCIS withdrawing their decisions and acknowledging that its reasoning was flawed. However, rather than grant Plaintiffs' Petitions, the USCIS articulated a new so-called reason to deny Plaintiffs' Petitions based on a clearly false premise. The reason for doing so was to avoid addressing the substantive errors in the USCIS's prior Decisions because those Decisions were unsupported by record evidence and resulted in a misapplication of law.

2.      The USCIS arbitrarily denied Plaintiffs' Petitions for Adjustment of Status and elected not to allow and consider the Plaintiffs' third motion to reopen and reconsider. (*See* Third Motion to Reopen and Reconsider attached hereto as Exhibit 2.) Plaintiffs received this devastating news on or about July 3, 2019. (*See* USCIS July 3, 2019 Notice attached hereto as Exhibit 3.) Accordingly, while the USCIS's third reason for denying Plaintiffs' Petitions is just as erroneous and arbitrary as the first two that were withdrawn, this time the USCIS decided it would no longer review and correct their mistake. It took the USCIS several months to decide not to accept and consider the Plaintiffs' third motion to reopen and reconsider. Apparently, during this time, the USCIS could not find a fourth basis to replace its flawed reasoning.

## **PARTIES**

3.      Gillian Cunningham ("Mrs. Cunningham") is a U.K. national. She has resided in the United States since 2008.

4.      Kevin Cunningham ("Mr. Cunningham") is an Irish national. He has resided in the United States since 2008.

5. The United States Citizenship and Immigration Services is the federal agency that adjudicates applications for immigration benefits.

6. Kevin K. McAleenan is the duly appointed Acting Secretary of the Department of Homeland Security, which oversees the USCIS.

7. Kenneth T. Cuccinelli is the duly appointed Acting Director of the USCIS.

8. DeShawna Williams is the duly appointed Field Office Director of the Memphis, Tennessee office of the USCIS.

## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction to hear Plaintiffs' request for relief pursuant to 28 U.S.C. §§ 1331 and 1361.

10. Officials and agencies of the United States have been named as defendants in this matter. Thus, the Court has jurisdiction under the Administration Procedures Act pursuant to 5 U.S.C. §§ 551 et seq. and 5 U.S.C. §§ 701 et seq.

11. The Court has jurisdiction because Plaintiffs seek declaratory relief pursuant to 28 U.S.C. § 2201.

12. Venue in the United States District Court, Western District of Tennessee is proper pursuant to 28 U.S.C. § 1391(e). Defendants are situated in the judicial district wherein a substantial part of the events and/or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

13. Mrs. Cunningham is a national of the United Kingdom ("U.K.") and Mr. Cunningham is an Irish national. Ireland and the U.K. have separate trade treaties with the United States.

14.     The Cunninghams first applied for E-2 Treaty-Investor visa status in 2008 at the U.S. Consulate in London, United Kingdom.  At the time, Mr. and Mrs. Cunningham were both 50% shareholders in the company, K&G Upholstery ("K&G").  Thus K&G was a dual Irish/UK enterprise at that time for E-2 visa purposes.  (See copies of Mr. and Mrs. Cunningham's 2008 visa stamps attached hereto as collective Exhibit 4.)  Both Mr. and Mrs. Cunningham's 2008 visa stamps contained the Annotation, "K&G UPHOLSTERY LLC."  Based on this annotation, Mrs. Cunningham was being admitted as an E-2 treaty investor at that time.

15.     The Cunninghams entered the US in 2008 under an E-2 treaty investor status. Shortly thereafter, Plaintiffs learned that Mrs. Cunningham needed her own social security number to establish credit for K&G and take care of other business-related issues.  However, Mrs. Cunningham was told by U.S. officials that she could not get a social security number given her immigration status.  Officials at the Social Security Administration informed Mrs. Cunningham that because Mr. and Mrs. Cunningham entered the United States before they were married, the Social Security Administration would only issue a social security number to Mr. Cunningham as the principal business owner.  Mrs. Cunningham was told to apply for an Employment Authorization Document ("EAD") with Immigration to get her own social security number.  (*See* Affidavit of Mrs. Cunningham attached hereto as Exhibit 5.)

16.     In July 2008, Mrs. Cunningham made an appointment with the USCIS Field Office in Memphis, Tennessee to inquire about an EAD so she could obtain a social security number.  During that meeting, the USCIS officer told Mrs. Cunningham that she was not entitled to an EAD as a 50% shareholder and co-owner of K&G under the E-2 visa due to the "50% rule."  The USCIS officer told Mrs. Cunningham that this could only be fixed by the U.S. Consulate in London.  (*See* Affidavit of Mrs. Cunningham attached hereto as Exhibit 5.)

17. In July 2008, Mrs. Cunningham then contacted the U.S. Consulate in London to inquire about a change in ownership of K&G so she could obtain an EAD. The officer instructed Mrs. Cunningham, at this time, that she was not entitled to a work authorization because she was a 50% owner of K&G. The officer explained that the Cunninghams had to change the ownership structure so Mrs. Cunningham would own less than 50% of K&G. The officer said there was nothing they could do at that time, however, and that Mrs. Cunningham would need to wait to apply in 2010. (*See* Affidavit of Mrs. Cunningham attached hereto as Exhibit 5.)

18. Effective January 1, 2010, K&G changed its ownership structure so that Mr. Cunningham, an Irish national, owned a majority share of the business (70%), and Mrs. Cunningham, a national of the United Kingdom, owned a minority share of the business (30%).

19. In early 2010, the Cunninghams applied to renew their E-2 visas at the U.S. Consulate in London. Their applications included an ownership structure letter agreement noting the change in ownership.

20. Mr. Cunningham received an invitation for an interview at the London Consulate. As Mrs. Cunningham was not included on the initial interview notice, Mr. Cunningham emailed the Consulate on February 22, 2010 to inquire about Mrs. Cunningham's attendance at the interview as his spouse for a "Derivative E-2 Visa." (*See* Email from Kevin Cunningham to the London Consulate attached hereto as Exhibit 6.)

21. On or about March 23, 2010, the Cunninghams appeared for an interview at the U.S. Consulate in London. They were both questioned about their applications and the business of K&G. During that interview, it was confirmed that Mr. Cunningham (Irish national) was now a majority owner of K&G, and Mrs. Cunningham (UK national) was now a minority owner. (*See* Affidavit of Mrs. Cunningham attached hereto as Exhibit 5.)

22. The Consular officer informed the Cunninghams that he was issuing new visas for the full five (5) years. However, the officer said there was a problem with a match on Mr. Cunningham's name that had to be cleared up first, so the Consulate would be holding his passport while that was being resolved. Mrs. Cunningham asked if she could go ahead and travel to the U.S. without Mr. Cunningham, and the officer said that he had to check to see if she could since her status derived from the status of her spouse Mr. Cunningham, the principal applicant. The Consular Officer left to inquire about this, and then said Mrs. Cunningham was approved as a derivative spouse E-2 visa. (*See* copy of the approved 2010 visa stamp attached as Exhibit 7; *see also* Affidavit of Gillian Cunningham attached as *Exhibit* 5.) Mrs. Cunningham's 2010 visa stamp contained the Annotation: "PA: CUNNINGHAM, KEVIN MARTIN." Since Mrs. Cunningham's visa stamp no longer stated "K&G UPHOLSTERY LLC" in the Annotation section, this meant that she was being admitted as the spouse of Mr. Cunningham, the principal E-2 applicant and no longer had an E-2 treaty investor status.

23. Mrs. Cunningham's E-2 spouse visa was approved and valid from 3/23/10 to 3/21/15 (visa control number 20100814820002).

24. Mr. Cunningham was subsequently issued his approved E-2 visa stamp as the principal applicant for K&G, as referenced in the Annotation to his visa stamp.

25. Using her new 2010 E-2 spouse visa, Mrs. Cunningham returned to the U.S. On April 2, 2010, Mrs. Cunningham was admitted to the United States as an E-2 spouse pursuant to the above E-2 spouse visa stamp for a period of stay through 4/10/12. (*See* copy of the approved 2010 visa stamp attached as Exhibit 7 – I94 number 69626420521.)

26. Mrs. Cunningham applied for work authorization as the derivative spouse of an E-2 principal in 2010. Included in that application was a copy of the 2010 derivative spouse E-2

visa stamp issued by the U.S. Consulate in London. The entire time Mrs. Cunningham completed and submitted the application, she understood from both the representations made by the Consular Officer and the visa stamp issued by the U.S. Consulate in London that she was admitted as a derivative spouse of an E-2 principal applicant and was, therefore, entitled to apply for work authorization and a social security card. (*See* Affidavit of Mrs. Cunningham attached hereto as Exhibit 5.)

27. On September 30, 2010, upon review of the application, including the E-2 derivative spouse visa issued by the U.S. Department of State's Consular Officers in London, the USCIS approved Mrs. Cunningham's application for an EAD as a spouse of an E-2 principal (category code A17). (*See* copy Mrs. Cunningham's EAD attached hereto as *Exhibit* 8.) Mrs. Cunningham's EAD was valid from 9/30/10 to 4/10/12 (SRC-10-901-37960).

28. USCIS's September 30, 2010 approval of Mrs. Cunningham's EAD signified that Mrs. Cunningham was admitted into the U.S. as an E-2 spouse because E-2 investors/employees were not authorized under the law to receive an EAD. Only E-2 spouses can receive an EAD.

29. At all times subsequent to 2010, Mrs. Cunningham applied for and was admitted to the U.S. in E-2 derivative spouse status. These applications for derivative spouse E-2 status were approved by both the USCIS and the U.S. Department of State.

30. On February 21, 2012, the Cunninghams applied for extensions of their current visas. Mr. Cunningham applied for an extension of his E-2 treaty investor visa, and Mrs. Cunningham applied for her extension as an E-2 spouse. She applied at the same time to extend her EAD as an E-2 spouse. The USCIS approved both of Mrs. Cunningham's petitions. (*See* copies of Mrs. Cunningham's extension approvals attached hereto as collective Exhibit 9.)

31. The Cunninghams' February 21, 2012 application cover letter clearly spelled out that Mrs. Cunningham was applying as an E-2 spouse, and laid out the 70/30 ownership structure of K&G as well as Mr. and Mrs. Cunningham's different nationalities. Under the law, Mrs. Cunningham was, at this time, no longer able to be approved as an E-2 Principal Applicant or Employee. Rather, Mrs. Cunningham could be admitted only as a spouse of an E-2 Principal because her nationality (U.K.) differed from the nationality of her husband who was the principal shareholder of K&G (Irish national).

32. Mrs. Cunningham's February 21, 2012 application was submitted on Form I-539, which is the application form for a spouse of a principal applicant.

33. Mr. Cunningham's visa application, on the other hand, was made using the I-129 Petition of Non-Immigrant Worker. If Mrs. Cunningham had intended to apply as a Non-Immigrant Worker or E-2 Principal Investor, she would have also used the I-129 Form, not Form I-539.

34. In Mrs. Cunningham's February 2012 I-539 petition, Mrs. Cunningham requested an extension of stay as an E-2 spouse, not a change of status from an E-2 investor or employee to an E-2 spouse.

35. Mrs. Cunningham's I-539 petition to extend her E-2 spousal status was approved, and valid from 5/23/12 to 5/22/14 (WAC-12-096-50694). The fact that USCIS approved Mrs. Cunningham for an extension of stay as an E-2 spouse is an admission on USCIS's part that she was already here in E-2 spouse status. Otherwise, the application for extension of stay would have been denied.

36. Mrs. Cunningham's EAD extension under Code A17, which is available only for E-2 spouse visas, was approved, and valid from 5/23/12 to 5/22/14 (WAC-12-096-50703).

37. Mrs. Cunningham also understood that as a derivative spouse of an E-2 visa holder, she was allowed to enroll in school to further her college studies. Prior to commencing her studies with the University of Phoenix, Mrs. Cunningham was asked to submit a copy of her derivative spouse E-2 visa stamp to the school's admissions office in April 2013. She was only admitted to the University after the school had confirmed her eligibility to attend classes.

38. On July 11, 2014, Mrs. Cunningham applied again for a renewal of her EAD as a spouse of an E-2 principal.

39. The USCIS issued a Request for Evidence on September 25, 2014, seeking evidence of Mrs. Cunningham's marital relationship to the principal E-2 applicant, Kevin Cunningham. Mrs. Cunningham responded with that information on October 7, 2014. The reason USCIS made this request was because it understood that Mrs. Cunningham was applying for an extension of stay as an E-2 spouse. Indeed, in the request for evidence, the USCIS acknowledged, "[y]ou have requested employment authorization on Form I-765 based on being admitted to the United States as a NIV (E-1, E-2, or L-1 [sic] nonimmigrant spouse." (*See* USCIS 2014 Request for Evidence attached hereto as Exhibit 10.)

40. Mrs. Cunningham's EAD was again approved by USCIS for category code A17, signifying the USCIS considered her to be admitted as an E-2 spouse, not as an E-2 principal or employee. Mrs. Cunningham's EAD was valid from 5/24/14 to 1/7/19 (SRC-17-902-42903).

41. On January 26, 2015, Mr. and Mrs. Cunningham applied at the U.S. Consulate in London to renew their visas. Mr. Cunningham applied as an E-2 principal. Mrs. Cunningham applied as the spouse of an E-2 principal. (DOS Confirmation Number AA004PB1BC)

42. On March 13, 2015, Mrs. Cunningham was approved again by the U.S. Department of State for an E-2 spouse visa with the notation "PA: Cunningham, Kevin Martin"

9

(DOS visa number 20150340710002) valid through 3/10/2020.  (*See* 2015 visa approval attached hereto as Exhibit 11.)

43. Mrs. Cunningham entered the U.S. in valid E-2 spouse status on March 23, 2015.

44. Mrs. Cunningham has never made any knowing misrepresentation about her immigration status to apply for an EAD or to enroll in a degree program.  Rather, at all relevant times she simply relied upon the approvals of the U.S. Department of State and the USCIS establishing that following her 2010 entry into the U.S., she was admitted as a derivative E-2 spouse of her husband, Kevin Cunningham, the principal applicant.

45. Pursuant to her approved EADs, Mrs. Cunningham was lawfully employed by North American Electric.  On or about July 19, 2017, North American Electric filed its form I-140 Immigrant Petition for Alien Worker on behalf of Mrs. Cunningham.  (See I-140 Receipt Notice, attached hereto as Exhibit 12).  Concurrent with that Petition, the Cunninghams submitted their I-485 Petitions to the USCIS.

46. On or about January 4, 2018, the USCIS approved the I-140 Immigrant Visa Petition filed on behalf of Mrs. Cunningham.  (See I-140 Approval attached hereto as Exhibit 13).  However, on or about September 10, 2018, the USCIS issued its first Decision denying the Cunningham's I-485 Petitions.

47. As grounds for the first Denial, the USCIS stated that Mrs. Cunningham was currently authorized to be in the United States pursuant to an E-2 treaty investor status for K&G Upholstery.  The USCIS further stated that Mrs. Cunningham's status only permitted her to work for K&G Upholstery and did not authorize her to attend school.

48. The USCIS Decision was erroneous and completely ignored the fact that Mrs. Cunningham's immigration status changed from that of an E-2 treaty investor to an E-2 spouse

in 2010. The USCIS Decision further ignored the fact that it repeatedly acknowledged and extended Mrs. Cunningham's status as an E-2 spouse between 2010 and 2018. The first Decision also ignored the fact that because the ownership structure of K&G had changed to 70% ownership by Mr. Kevin Cunningham (Irish national) and 30% Mrs. Gillian Cunningham (U.K.) national, the E-2 enterprise K&G became solely an Irish entity, thereby making it impossible for Mrs. Cunningham to have been granted status as an E-2 treaty investor or employee. Rather, following the 2010 ownership restructuring of K&G, Mrs. Cunningham could only qualify for E-2 status as a derivative spouse of the principal E-2 treaty investor, Kevin Cunningham.

49. The Cunninghams filed a motion to reopen and reconsider with the USCIS in October of 2018 on the grounds that the USCIS had erroneously reached the conclusion that Mrs. Cunningham was an E-2 treaty investor.

50. On November 13, 2018, the USCIS issued a second Decision. This Decision acknowledged that Mrs. Cunningham was not an E-2 treaty investor. However, the USCIS stated that it was still denying the Cunningham's Petitions. Shifting its grounds for denial, the USCIS determined that Mrs. Cunningham's immigration status was an E-2 treaty employee, which also would have only permitted her to work for K&G Upholstery and did not authorize her to attend school.

51. After receiving the USCIS's second Decision, the Cunninghams filed a second motion to reopen and reconsider in December of 2018. The Cunningham's second motion explained that as a U.K. citizen, Mrs. Cunningham could not have qualified for E-2 employee status since she had a different nationality than that of principal applicant, her husband Kevin Cunningham (Irish national). The Cunninghams pointed the USCIS to the initial 2010 visa issued by the US Department of State indicating her E-2 spouse status, and the multiple,

subsequent approvals by the USCIS that operated as an admission by USCIS that Mrs. Cunningham had indeed been admitted into the U.S. in E-2 spousal status in 2010.

52.     On February 26, 2019, the USCIS issued a third Decision.  This Decision acknowledged that Mrs. Cunningham was not an E-2 treaty employee.  However, the USCIS shifted its rationale again and stated that it was still denying the Cunningham's Petitions.  This time the USCIS inexplicably determined that Mrs. Cunningham's immigration status was an E-2 treaty investor AGAIN.  Yes, the USCIS reverted back to the status that it had previously acknowledged was not accurate in the second Decision.  This decision was contrary to the record evidence and the law.

53.     After receiving the USCIS's shocking, third Decision, the Cunninghams filed a third motion to reopen and reconsider in March of 2019.  Just as they had done previously, the Cunningham's third motion explained why Mrs. Cunningham had an E-2 spouse immigration status, not an E-2 treaty investor status and attached additional documentation and information in an effort to have the USCIS correct its clearly erroneous decision in order to avoid the cost and expense of the instant litigation.

54.     On July 3, 2019, the USCIS issued a notice that essentially stated that it was declining to consider the Cunningham's motion and dismissing same, because it did not include any new facts or evidence.  This statement was false, and was nothing more than an effort to avoid the fact that on three prior occasions, the USCIS had issued erroneous and unlawful decisions.

55.     This USCIS finding and refusal to consider the Cunningham's latest motion to reopen and reconsider is almost as absurd as the erroneous determination that Mrs. Cunningham's immigration status is that of an E-2 treaty investor.

56. The USCIS has literally refused to simply acknowledge that Mrs. Cunningham's Visa designation changed from an E-2 treaty investor to an E-2 spouse in 2010. This determination can be made by briefly examining her Visa and the multiple, subsequent approvals issued by the USCIS which affirmed her status. However, rather than acknowledge and rely upon the actual evidence before it, the USCIS has elected to turn a blind eye to it and determine that Mrs. Cunningham has a status – E-2 treaty investor – that is not supported by the evidence.

57. The USCIS's decisions and determinations as it relates to the Cunninghams have been arbitrary and capricious.

### IRREPARABLE INJURY

58. Paragraphs 1 through 56 are incorporated and repeated as if fully stated and set forth herein.

59. Based on the USCIS's most recent determination and refusal to acknowledge the various designations, approvals, and extensions granted by the USCIS to Mrs. Cunningham since 2010, the Cunninghams face the possibility of being deported.

60. Based on the USCIS's Decisions, the Cunninghams would become ineligible for continued work eligibility and international travel based on their Employment Authorization Documents and Advance Parole cards that expire November 13, 2019 (Kevin Cunningham) and November 18, 2019 (Gillian Cunningham). (See EADs attached hereto as Exhibit 14).

61. Since receiving the USCIS's first Decision in September of 2018, the Cunninghams have lived a constant reality and fear that the Department of Homeland Security could commence immigration removal proceedings at any point in time.

62. As an example, Mr. Cunningham's mother passed away in early 2019. However, since she lived in Ireland, he was not able to travel to the funeral due to the looming reality and/or possibility that he would not be permitted to reenter the United States.

63. The Cunninghams have lived in the United States since 2008 and have made it their home. If deported, they will be subjected to permanent and irreparable damage.

## **DECLARATORY JUDGMENT**

64. Paragraphs 1 through 61 are incorporated and repeated as if fully stated and set forth herein.

65. This Court has authority to issue a declaratory judgment regarding the rights, privileges, and duties of the parties under 28 U.S.C. § 2201.

66. This Court should declare that Mrs. Cunningham has maintained the status of an E-2 spouse since 2010.

67. This Court should declare that, as a result of having an E-2 Spouse immigration status, Mrs. Cunningham was permitted to seek the employment of her choosing and attend school if she so desired.

68. This Court should declare that the USCIS's failure to approve the Cunningham's I-485 Petitions was arbitrary and capricious.

69. This Court should declare that Mr. and Mrs. Cunningham are lawfully entitled to Adjustment of Status to Permanent Residency.

## **PRAYER FOR RELIEF**

WHEREFORE , Plaintiffs pray for the following relief:

A. Declare that the Defendants' determinations as to Plaintiff Gillian Cunningham's immigration status has been arbitrary, capricious, and contrary to the evidence and facts;

B. Declare that the Cunninghams' I-485 Petitions should have been approved;

C. Order USCIS to approve the Cunninghams' I-485 Petitions;

D. Grant an award of attorneys' fees and costs; and

E. Grant such other relief as the Court may deem just and proper.

Dated July 16, 2019

/s/S. Keenan Carter
Todd P. Photopulos (TN Bar #18846)
S. Keenan Carter (TN Bar #23386)
Diana M. Comes (TN Bar #30112)
Butler Snow LLP
P.O. Box 171443
Memphis, TN 38187-1443
901-680-7344 Direct
Todd.Photopulos@butlersnow.com
Keenan.Carter@butlersnow.com
Diana.Comes@butlersnow.com

48429305.v1